White, special Judge.
At the last term of this court, two causes were heard, to wit, Breedlove, Bradford and Robeson vs. Sommervllle and others, and Cox, Catron and M’Lcmore vs. the same parties, A final decree was pronounced, in which it was ordered, that James P» Clarke,-the receiver, pay over to the complainants, Breed-love, Bradford and Robeson, the sum of $10,142 83, with interest from the 24th of October, 1829, on or before the third Monday in January 1831; (deducting from that amount $150, which was allowed said Clarke as receiver;) that JohnC. M’Lemore should be allowed $700 *500 with interest; that the costs below should be paid as dirccted by the chancellor, and that Cox, Catron and M’-Lemore, should pay the costs of this court. It was fur-fuer ordered, that the receiver should collect, if possible, the note on William C. Middleton for $1000, and pay over the proceeds to the complainants, Breedlove, Bradford and Robeson.
After the final adjournment of the court, a bill of review was filed in this court, by Joshua Cox and John Ca-tron vs. Breedlove, Bradford and Robeson, M’Lemore, Sommerville and Fletcher; and an injunction and super-sedeas was granted by one of the judges to stay the collection of said money.
At the present term of this court, the following motions have been made by the said Breedlove, Bradford and Robeson, to wit: that the receiver James P. Clarke, be directed to pay over the money decreed to them at the last term in said causes; that a certain paper writing purporting to be a bill of review, filed in said court by Joshua Cox and John Catron, against the said Breed-love, Bradford and Robeson, Thomas H. Fletcher, John C. M’Lemore and John Sommerville, be taken off the files of the said court; also, that a paper writing, purporting to be a writ of injunction issued from the office of the clerk of said court, and by its terms purporting to enjoin the said Breedlove, Bradford and Robeson, from proceeding to enforce a decree rendered in their favor at the last, term of said court, may be taken off the files, and the process emanating from the office of the clerk of the said court against the said Breedlove, Bradford and Robeson, be quashed, &c.
The great interest which is manifested about the result of these motions; the time and ability which have been devoted to their investigation, and their importance perhaps withal, seem to require a careful examination at our hands.
In the first place, it is objected, that this court, as it is now organized, is not competent, either to hear the cause or determine these motions; that it was unconstitutional *501 in the legislature to authorize, or the governor to commission special judges to hear and determine this cause; that one of the regular judges, Robert Whyte, is not connected with either of the parties in such a- way, either by affinity or consanguinity, ns to come within the disability imposed by the constitution. Art. 5th, sec. 8, of the constitution, is in these words: “no judge shall sit on the trial of any cause, where the parties shall be connected with him, by affinity or Consanguinity, except by consent of parties. In case all the judges of the superior court shall be interested in the event of any cause, or related to all, or either of the parties, the governor of the State shall, in such case, specially commission three men of law knowledge for the determination thereof.” Here then, is the power specifically granted. Are not the mode and manner of its exercise, within the scope of legislative authority? Beyond all question. The grant of a power carries its necessary incident along with it, otherwise the power itself might be inoperative. In 1829, the legislature enacted a statute, making it the duty of the judges of the supreme court to certify to the govern- or all causes upon the docket, which two of the judges of the court were disqualified by law to hear and determine; which certificate being received by the governor, it was made his duty to appoint and commission two special judges, &c. This certificate was made out and signed by all the judges of the supreme court and filed in the executive office; the language of which is, that judges Whyte and Catron were ‘incompetent .by law’ to form a court for the hearing of this cause, and the motions which had been made in it. This certificate was made upon their official responsibility. Shall we look further, as it has been urged, and hear testimony in regard to the relationship which exists between one of the judges and either of the parties in the cause? If we can do this, we must have the power of summoning witnesses and making an issue to ascertain the verity of the judges’ certificate. It seems to me, we ought not to go beyond the certificate of the judges and the commission of the exe- *502 and the proper security against what was intended for the protection of parlies, must be found in the official responsibility of the regular judges. jf ¡¡)e question were in any way doubtful, (which it is not) it must be considered settled by contemporaneous exposition of the instrument, the practice having been uniform since the adoption of the constitution; frequently with much less precaution than is used in the act of 1829. The judicial, as well as the other departments of the government, has repeatedly sanctioned it; and a great many causes, involving important questions as well as a large amount of property, have been finally settled before such tribunals. Vide the case of Stuart vs. Laird, (1 Cranch 309.
I will now proceed to consider what I regard as the main question for our examination, which is this: after a cause has been heard, a final decree entered, and an adjournment of the court till the ensuing term, can a bill of review be filed in" this court? In determining this question, it will be necessary to look at the powers vested in the supreme court by the legislature. In 1809, it was established, and writs of error lay from the respective circuit courts to the court of errors and appeals. (1 Scott, 1155. By the act of 1811, (2 Scott, 36,) the supreme court was vested with exclusive jurisdiction in all causes in equity, arising in the circuits. The act of 1813, (2 Scott, 146,) gives the circuit court concurrent original jurisdiction of all causes in equity, with the court of errors and appeals. The legislature of 1822, seeing the great inconveniences which had resulted from the exercise of original jurisdiction by the supreme court, established courts of equity in each circuit, which were to “possess original equity jurisdiction, and no other, in all matters arising agreeably to law, in each circuit.” (ch. 13, sec. 1. The 3d section of that act, designates the places of holding the supreme court. The 4th section is in these words: “that said court shall not possess original jurisdiction in causes, cither in law or equity, but appeals and writs of error shall lie from the courts of law and equi *503 ty, holden within the circuits where said supreme courts are nolden.
The.act of 1819, (2d Scott, 485,) so much relied upon by the counsel for the complainants, is not considered entitled to any weight in the discussion, because it only relates to cause sdccided in the circuit courts in chancery, and an appeal to the supreme court; and its general language, even in such cases, must be restrained by the spirit of the acts of 1822, chapter 13, section 4, and ch. 14, sec. 10. This act (that of 1819) says, appeals from the chancery circuit courts shall lie to the supreme-court, and the party “shall be entitled to a re-, examination in said court upon the whole matter of law and fact, in the same way and under the same rules, regulations and restrictions, as other causes originally commenced in said supreme court are hoard and determined.” As soon as the. legislature, by the act of 1822, deprived the supreme court of original jurisdiction, and prevented any cause from being originally commenced in that court, it-foliows, eco consequenti, that the manner in which appeals in chancery from the circuit court were directed to be re-examined in the supreme court by the act of 1819, could hot be the criterion of their examination after the act of 1822; inasmuch as no cause could be originally conpmenced there, in the language of the act, after that time. And we accordingly find, that the legislature, in the act of 1822, ch, 14, sec. 10, only say, that appeals shall lie directly in any cause in equity determined in the circuit court, to the supreme court as heretofore, but do not state how they are to be examined in the supreme court; therefore, we must suppose they intended, even in such cases, that they should be re-examined in the mode in which it was competent for a court of appellate jurisdiction only, (which it was made by the act of 1822) to examine a cause. The same act (ch. 14, sec. 10,) indicates a distinction between causes that are taken up by appeal from the circuit court, and those that are taken up from the courts of equity established by the act of 1822; in this, that if-the cause goes up by *504 appeal from the circuit court, the supreme court, if they think proper, may order the taking of depositions; which the legislature say shall not be done without such authorization. But no such power is given to order the taking of such depositions in causes that go up by appeal from the courts of equity. “Electio unius est exclusio alterius.” It may here be remarked, that by a rule of the supreme court, no new testimony .is allowed tobe taken, even in causes that go up by appeal from the circuit court. This cause did not come up from the circuit court, but the court of equity which was established by the act of 1822, and we must therefore, look at that act to determine our powers.
What the legislature intended by this act, (of 1822, ch. 13,) is obvious; that the jurisdiction of the supreme court should be altogether appellate; that no cause can originate th'ere; it acts alone upon suits that have been instituted in other courts, and brought up by appeal or writ of error. Original jurisdiction is taken by express words from the supreme court, and vested in another tribunal.
What then is a bill of review? Lord Reddesdale, in his treatise upon pleading in equity, says, it is a bill in the nature of an original bill; (28, 63. It lies after a cause has been heard and a decree signed and enrolled, and it must be for error appearing in the body of the decree, or upon discovery of new matter. (3 Peere Wms. 371; 2 Atk. 178; 1 Ver. 117; 3 John. Chan. 124; 2 do 482. The prayer of the bill is, that the decree which has been pronounced may be revised and reversed; that the complainant may have a subpcena, (which is an original process issuing out of chancery,) requiring the defendant to appear and answer the bill, &c. and also for an injunction. All the. parties to the original bill must be made parties to the bill of review. (Cooper’s Eq. 95; 2 Brown Par. Ca. 107, Tom. Ed.) In the case before the court, writs of injunction and su-persedeas were both prayed for and obtained, and one of the parties who is made defendant in the bill of re,view, was complainant in the original bill.
*505 What is all this hut the exercise of original iurisdic-diction? The cause determined, the situation of the par-tics changed, a new bill filed, and a former complainant made defendant, writs of injunction and supersedeas obtained, the defendants brought in by original process out of chancery, and a decree prayed for against them. Hence it is that a bill of review is considered by all the writers, as far as Í have had an opportunity of examining, as one of the modes of proceeding in a court of chancery which has original jurisdiction. Vide 2 Com. Dig. Chan.Bill of Review (G;) Cooper’s Eq. 89, 60; 2 Eq. Ca. Abr. 174, 5, 6; 2 Mad. Chan. 537, 8; and 7 Dane’s Dig. 611, 12, and the numerous authorities there cited; but it is not recognized asa power belonging to a court of dernier resort, and whose jurisdiction is only appellate. Newland, in his practice of the high court of chancery, 369, speaking of the bill of review, says, “it is a mode of procuring a reversal of a decree in this court,” that is, in the court of chancery.
In the case of Ellzy vs. Lane’s extx. decided in the supreme court of appeals of Virginia, (which was a bill of review filed in the high court of chancery to revise the opinion of the chancellor, and an appeal to the supreme court,) it is said to be a well settled principle, that a bill of review cannot be brought until the decree sought to be revised and reversed be final, and the parties out of court. (2 Hen. & Mun. 589. If then a final decree must be entered, and the parties out of court before a bill of review will lie, how can a court, which is one simply of errors and appeals, without original jurisdiction, entertain a new bill, have the parlies brought before them by original process, re-examine the matter, and pronounce a decree? Can it be done without the exercise of that original jurisdiction, which we have seen is given exclusively to the courts of equity by the statute?
It is contended that this court obtained jurisdiction of the case by the appeal from the chancery court; that is true of the original cause; but that being at an end, the power of the court ceased with it. The bill of review *506 entirely, a new proceeding in this eourt; it has not come up either by appeal or writ of error, and consequently there is no foundation on which it can rest; itis not wjyhin the statute, to which we must look as the letter of our authority.
Another argument is, that the incident follows the principle, and that a bill of review is a necessary incident to the original cause in this court, and that we maj as well issue process and bring in the parties to a bill of review, as in a bill of revivor. I cannot regard it in that light; the latter is necessary to render effectual the powers of the court; the former is not; the one is in relation to a cause that has been finally ended, and the parties out of this court, according to the case in 2 Hen. and Mun. 589; the other issues to bring in parties, when the cause is depending and undetermined in the court. A bill of review is a necessary incident to a cause in a court of chancery that has original jurisdiction, if it is not appealed from; but in my opinion it is not a necessary incident to a cause in the court of errors and appeals, which is expressly prohibited from exercising original jurisdiction. No authority has been produced, and it is believed one cannot be found, that has made it an incident to such a court.
With respect to the act of 1801, (1 Scott, 693,) which speaks of bills of review, that has no application, because it refers to the old superior court as it was then organized, which had original jurisdiction both in law and equity.
For the purpose of elucidating this question, let us consider the powers and the practice of the English Parliament. The House of Lords is the supreme court of judicature in the kingdom, having no original jurisdiction over causes; but they may be removed to that tribunal from the court of King’s bench, and from the court of Exchequer chamber by writ of error; and from the equity side of the court of Exchequer, and from the high court of chancery by appeal. (3 Black. Com. 41, et seq. In 5 Com. Dig. Parl. L. 48, it is said, the lords have no *507 original jurisdiction in any case; for which Lord Raym. 15, and 2 Salk. 511, 12, are cited. And although it is laid down in some of the old books, that Parliamentum omnia potest; and again, that the power of Parliament is so absolute, that it cannot be limited to things or persons, (4 Inst. 36) yet we find, that Parliament cannot do any thing out of the limits of its jurisdiction, nor make a determination upon an original petition, in a matter that does not come before them by error. (5 Com. Dig. Parl. K. Skin. Rep. 523; New. Chan. Prac. 370, 7; 2 Brown’s Parl. Cases, Title bill of review, (Tom. Ed.) There is no case reported, where a bill of review has lain to a decree in the House of Lords; and it is probable they have not gone farther than in the case cited at bar, of Bernal vs. Marquis of Donegal and others, (3 Dow’s Parl. Ca. 157,) where they permitted a mistake to be rectified, that had intervened in drawing up the judgment of the house. It is believed then, that a bill of review can-nofbe resorted to in the House of Lords, whose jurisdiction in this regard is analogous to that of our supreme court; and that after an affirmance of a decree in Parlaiment, even if it has been obtained by fraud, the only remedy would be by a bill in the court of chancery to set aside the decree for fraud. (2 Mad. Chan. 537.
The interpretation given to their own powers by the supreme court of the United States, should not be without its influence upon this court. By the judiciary acts of 1789 and 1803, (2d Bior. 62, 4, and 3d Bior. 560;) that court has appellate jurisdiction in certain' cases and under certain limitations, and final judgments at law and decrees in equity, rendered in the circuit courts, may be taken to the supreme court, by writ of error or appeal, and re-examined, reversed, or affirmed in that court. I have not been able to discover from my examination, any cáse where'a bill of review has been entertained originally in that court, or in any other way than by appeal upon a bill of review, founded upon a decree of the circuit court. In causes of such magnitude and interest as have occasionally come before that tribunal, it cannot be *508 doubted that a rc-cxamination would sometimes have oc-enrred, if snen a mode oí proceeding as a bill of review could be maintained. In the case of Martin vs. Hunter's lessee, they use this language, which is applicable here: “a final judgment of this courtis supposed to be conclusive upon the rights which it decides, and no statute has-provided any process by which this court can revise its judgments. In several cases which have been formerly adjudged in this court, the same point was argued by counsel, and expressly overruled. It was solemnly held, that a final judgment of this court was conclusive upon the parties, and could not be re-examined.” (1st Wheaton, 355;) that was, to be sure, a writ of error from the court of appeals of Virginia, founded upon a judgment in an action of ejectment; but it may as well be said, that the decree of an appellate court that has no original jurisdiction, is conclusive, as the judgment of the same court upon a writ of error, where the statute has provided, no process by which the court can revise its own decrees.
In the state of New York, they have a supreme court for the correction of errors. A bill of review is frequently recognized in their chancery reports as a mode of proceeding in a court of chancery, to revise the decree of the chancellor, but not to revise a decree of the supreme court of that state. See the case of Gelston vs. Codwise, 1st John. Chan. 189.
In the case of Haskell and others vs. Raoul and wife, in the court of appeals in South Carolina, (1st M’Cord’s Chan. Rep. 23,) one question was, whether a petition for a bill of review should be granted? The court decided against the exercise of the power. They say, “the court of appeals is accessible to all, and in the exercise of its legitimate powers, can and does answer all the beneficial purposes which can arise from bills of review for error in the decree;” page 30., To the same effect, 1st Hen. and Mun. 13.
That the legislature of this state must have regarded bills of review in the same light, I think will be dear from reference to the 2d section, 14th chap, of the acts of *509 1822. It directs the courts of equity established by the . -, . , , ..... act passed at that session, to have and exercise jurisdiction of all causes and suits in equity depending in the supreme court of errors and appeals, in the same manner as if said causes had been originally commenced in said courts of equity; and “also of all bills of review which may be depending and undetermined in .the supreme court.” For what purpose I would ash, are bills of review which were then depending and undetermined, directed to be sent to the courts of chancery, except that it required the exercise of original jurisdiction to entertain and effectuate such bills? The argument which may be drawn from the latter clause of the above section, is to my mind unanswerable. Here is an express legislative provision, sending bills of review (which were filed in the supreme court when it had original jurisdiction) to the courls of equity established by the statute of 1822; which shows that the legislature of Tennessee had the same opinion of bills of review, with the enlightened jurists of England and the United States; that they belong to courts of original equity jurisdiction, and not to a court of the last resort, whose jurisdiction is entirely appellate.
Whether then, we consider this question in reference to the statute organizing the court and defining its jurisdiction, or to authority in analogous cases, we must decide against the exercise of this pow'er.
No case has been cited at the bar that is recollected, where an appellate court of the last resort without original jurisdiction, has entertained such a bill. Ought this court then to hazard the experiment? I think not. The powers of our courts depend upon legislative enactment; and they-ought to be careful not to transcend the limits of their authority.
It is insisted, that a party has a right to file a bill of review w'ithout leave of the court for errors apparent upon the face of the decree; that the record is now in this court, and that consequently it cannot be filed in the court of chancery. The law, I apprehend, is this; when a cause has been decreed by the chancellor, a party may *510 appeal directly from his decision to the supreme court, and obtain a re-examination both of law and fact; if he does not take that course, after the adjournment of the chancery court for the term, he has a right to file his bill of review in the chancery court, for errors of law apparent upon the decree; and from the decision of the chancellor upon the bill of review, the party has a right to an appeal to the supreme court. When the cause has been re-examined in the supreme court, in either of these modes, and a decree pronounced, (unless a re-hearing shall be allowed during the term,) the whole remedy is exhausted, unless fraud has intervened in obtaining the decree, or some new equity, as in the case of Barbon vs. Searle, (1st Vern. 416,) which would authorize the party to file his original bill in the court of chancery to set aside the decree.
' The view which I have taken of the case, is in accordance with public policy. Expedit Reipublicm ut sit finis litiurn, is a maxim which should be regarded. At some reasonable period there should be an end to a controversy, and the rights of the parties finally ascertained. When a cause has been fully argued, and deliberately decided in a court of the last resort, neither party should be permitted to disturb it. It would be too harrassiug to individuals, and introduce an uncertainty in the administration of the law, which would be more intolerable than any erroneous decision that might occasionally intervene. In the language of Chancellor Kent, in the case of Gelston vs. Codwise, “such a precedent as the one now sought for, would tend to fix a character of dangerous instability on the administration of justice.”
Several questions have been made by the counsel, of considerable importance, which I do not deem it necessary to examine, as the motions must be decided upon what has been already said.
There is another point however, which deserves some notice: can the bill which has been filed, be disposed of in this summary way? or, should there be a plea of the former decree, and a demurrer against opening the enrol *511 ment? The rule which is laid down hy Lord Eldon, in i i • r the case of Perry vs. Philips, (17th Ves. 184,) is, that if the hill is known to the forms of the court, it must be open to plea or demurer; if not, it may be taken off the files as a novelty. Such too, is the opinion of Judge Whyte, (manuscript) in the case of Patterson vs. Anderson and others, decided at Nashville, January term, 1898. If a demurrer is filed, it admits the jurisdiction of the court, and the bill must be examined to see if there is any equity: but if the court has no jurisdiction of any such matter; if the bill cannot be received and acted upon here; if it is not known to the forms of the court, it may be taken off the files by this summary process. This being my opinion of the character of the bill, the motions must be sustained; the receiver directed to pay over the money according to the former decree; the bill of review and injunction, be taken off the files, and the process which has emanated upon it be quashed.
The original cause has been said 'by the counsel, to be one that was important in its principles, as well as the amount. It was so regarded by the court, and examined by them with the greatest solicitude, and . the decree was the result of their deliberate judgment. I cannot see any reason for allowing another argument upon the merits, that would not apply with equal force to every other cause. Nearly eight days were taken at the last term from the opening of the cause, until the opinion was pronounced. It was argued upon both sides with distinguished ability and . research, and the opinion of the court was unanimous. Under such circumstances, it cannot be supposed that another argument would avail any thing; the only effect would be a consumptiou of the public time, which now belongs to the other suitors in the court.
Craighead, Judge, concurred.